IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:10cv105

| | |
|---|---|
| MELISSA YOUNGBLOOD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> METROPOLITAN LIFE ) <br> INSURANCE COMPANY and ) <br> THE EATON CORPORATION/ ) <br> 27701 EMPLOYEE WELFARE ) <br> BENEFIT PLAN, ) <br> ) <br> Defendants. ) <br> ) | **MEMORANDUM OF DECISION <br> AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 19].

## PROCEDURAL HISTORY

The Plaintiff Melissa Youngblood (Youngblood) initiated this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, et. seq., on May 25, 2010. [Doc. 1]. In the Complaint, it is alleged that at all relevant times, the Plaintiff was a participant in the Eaton Corporation/27701 Employee Welfare Benefit Plan (the Plan) issued by her

employer, Eaton Corporation (Eaton). [Id.]. The Plan provided for life insurance and accidental death benefits for Eaton employees and their dependents. [Id.]. The Plaintiff was married and covered under the Plan at the time of her husband's death. [Id.]. The Plan paid Plaintiff's life insurance claim, but the claim pursuant to the accidental death coverage was denied based on an exclusion.

Plaintiff's action is based solely on the Defendants' failure to pay the accidental death benefit claim. [Id.]. As such, the Plaintiff seeks relief pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), which provides, in pertinent part, that a participant in an employee welfare benefit plan covered under ERISA may bring a civil action to recover benefits due under the terms of the plan and/or to enforce her rights under the terms of the plan.

This case hinges on certain questions of law, and therefore the disposition of this matter on summary judgment is appropriate. ERISA cases are normally submitted on motions for summary judgment rather than as bench trials. Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305, 311 n.14 (4th Cir. 2002), abrog. on other grounds Carden v. Aetna Life Insurance Co., 559 F.3d 256 (4th Cir. 2009).

## STANDARDS OF REVIEW

> In [Metropolitan Life Insurance Co. v.] Glenn, [554 U.S. 105, 111, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008)], the [Supreme] Court held that judicial review of an ERISA plan administrator's decision is "under a *de novo* standard unless the plan provides to the contrary." But when plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard. [T]he Glenn Court also held that the administrator's conflict of interest did not change the standard of review from the deferential review, normally applied in the review of discretionary decisions, to a *de novo* review, or some other hybrid standard. Indeed, the Court stated more broadly that the conflict of interest should not lead to "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Rather, a conflict of interest becomes just one of the "several different, often case-specific, factors" to be weighed together in determining whether the administrator abused its discretion.

Carden, 559 F.3d at 260 (citations omitted, emphasis in original).

The Plan provides life insurance and accidental death and dismemberment benefits for its employees and their dependents. [Doc. 20-2]. These benefits are insured by Metropolitan Life Insurance Company (MetLife) which is designated by the Summary Plan Description (SPD) as the Claims Administrator for those benefits. [Id.; Doc. 20-4, at 34]. The premiums for the employer-provided benefits are paid by Eaton from its general assets. [Id.]. Premiums for additional coverage are paid by employee contributions. [Id.]. Pursuant to the terms of the Plan, the Claims Administrator (MetLife) was vested with

3

> all discretionary authority to interpret and apply Plan terms and conditions and to make factual determinations in connection with its review of claims under the Plans. [MetLife's] discretionary authority is intended to include, but is not limited to, the determination of whether a person is entitled to benefits under the Plans and the computation of any and all benefit payments. [MetLife] also has the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial that has been appealed by a claimant[.]

[Id., at 36]. As such, the Plan provides for "discretionary authority to determine [entitlement to] benefits" and, thus, "a deferential standard of review is appropriate." Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 358 (4th Cir. 2008) (quoting Glenn, 554 U.S. at 111); Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 638 (4th Cir. 2007) (district court makes a de novo determination whether the plan documents confer discretionary authority on the administrator; if so, court reviews for abuse of discretion); Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000) ("We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority.").

The Court held in Glenn that when an employer serves as both the administrator (i.e., the evaluator) and the funder (i.e., the payor) of an employee welfare benefit plan, a conflict of interest occurs. Glenn, 238 S.Ct. at 2348-49.

> As it now stands after Glenn, a conflict of interest is readily determinable by the dual role of an administrator or other

fiduciary, and courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest. Under that familiar standard, a discretionary determination will be upheld if reasonable. And any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination. In Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335 (4th Cir. 2000), [the Fourth Circuit] identified eight nonexclusive factors that a court may consider, including a conflict of interest:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Champion, 550 F.3d at 359 (quoting Booth, 201 F.3d at 342-43). This standard applies regardless of whether such administrator/payor is the employer or a contractor such as an insurance company. The Court will therefore apply the standard enunciated in Glenn.

> Although [the Court considers] summary judgment [motions] in the light most favorable to the non-moving party, [it] must also evaluate a denial of benefits under an abuse of discretion standard when, as here, an ERISA benefit plan vests discretionary authority to make benefit [entitlement] determinations with the plan administrator. An administrator's

5

decision will not be disturbed if it is reasonable, even if [this Court] would have come to a different conclusion independently. A decision is reasonable when it is the result of a deliberate principled reasoning process and if it is supported by substantial evidence.

Vaughan v. Celanese Americas Corp., 339 F. App'x. 320, 322 (4th Cir. 2009) (internal quotation and citations omitted).

This reasonableness inquiry is guided by the eight factors set forth in Booth. White v. Eaton Corp. Short Term Disability Plan, 308 F. App'x. 713, 716 (4th Cir. 2009). The Claims Administrator's decision must also be based on "[s]ubstantial evidence [which] consists of less than a preponderance but more than a scintilla of relevant evidence that a reasoning mind would accept as sufficient to support a particular conclusion." Whitley v. Hartford Life & Acc. Ins. Co., 262 F. App'x. 546, 551 (4th Cir. 2008) (internal quotation and citation omitted); Newport News Shipbuilding and Dry Dock Co. v. Cherry, 326 F.3d 449, 452 (4th Cir. 2003).

**STATEMENT OF FACTS FROM THE ADMINISTRATIVE RECORD**

On September 10, 2009, Plaintiff's husband, Larry Joe Youngblood, was killed in the crash of a small airplane. [Doc. 20-5 at 14]. It is undisputed that he was piloting the plane at the time of the crash and was the only person on board. [Id. at 28].

Through her employment with Eaton, Plaintiff had life insurance and

accidental death coverage for herself and her dependents. The accidental death benefit in effect at the date of the crash had an exclusion that reads:

> We will not pay benefits under this section for any loss caused or contributed to by:
> ...
> 6. any incident related to ... travel in an aircraft as a pilot, crew member, flight student or while acting in any capacity other than as a passenger[.]

[Doc. 20-3 at 66; Doc. 20-4 at 23-24].

Defendant paid the life insurance claim. On November 12, 2009, however, MetLife notified the Plaintiff that her claim pursuant to the accidental death coverage on behalf of her husband was denied as excluded under the policy provisions. [Doc. 20-5 at 2-3]. It was noted that her husband died in a single plane crash and that no other individuals were in the plane. [Id.]. As a result, the exclusion contained within the policy related to the piloting of air craft precluded any coverage. [Id.]. The Plaintiff was advised that she had sixty days within which to submit a written request to appeal that determination. [Id.]. It is undisputed that the Plaintiff did not make such a request. [Doc. 23 at 5-7].

## DISCUSSION

Plaintiff asserts that the exclusion at issue is void and unenforceable and therefore cannot be used to deny her the accidental death benefit. She asserts that the exclusion fails because at the time of the decedent's death, it

7

had not yet been approved by the North Carolina Department of Insurance (NCDOI). Plaintiff relies on N.C. Gen. Stat. §§58-3-150, which provided in pertinent part as follows:

> (a) It is unlawful for any insurance company licensed and admitted to do business in this State to issue ... any policy, contract, or certificate ... until the forms of the same have been submitted to and approved by the Commissioner, and copies filed in the Department. ...
>
> (b) With respect to group and blanket accident ... insurance, ... issued and delivered to *a trust or to an association* outside of this State and covering persons resident in this State, the group certificates to be delivered or issued for delivery in this State shall be filed with and approved by the Commissioner pursuant to subsection (a) of this section.

N.C. Gen. Stat. §58-3-150 (emphasis provided).[1] It is undisputed that the exclusion in question was not approved by NCDOI until two months after the decedent's death.[2]

---

[1] Effective June 23, 2011, the statute was amended. 2011 North Carolina Laws S.L. 2011-196 (H.B. 298).

[2] On the issue of the approval of the exclusion by NCDOI both sides have submitted materials which are not part of the administrative record. Ordinarily, "[a] reviewing court's assessment of the reasonableness of an administrator's decision is limited to a review of the documents in the administrative record." Frankton v. Metropolitan Life Insurance Co., ___ F. App'x ___, 2011 WL 1977617 (4th Cir. 2011) (citing Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Insurance Co., 32 F.3d 120, 125 (4th Cir. 1994) (rule applied to abuse of discretion review); Gallagher v. Reliance Standard Life Insurance Co., 305 F.3d 264, 276 n.12 (4th Cir. 2002) (rule applied to de novo review); Craine v. Hartford Life and Accident Ins. Co., 2011 WL 1130591 (M.D.N.C. 2011) (scope of admissible evidence limited to the administrative record). In light of the fact that these items outside the record pertain to facts which are not disputed, the Court will receive these items as reflective of the parties' agreement.

Plaintiff makes two arguments that this failure to obtain prior approval voids the exclusion and thus entitles her to payment.

First, she asserts that since Eaton is domiciled out of the state,[3] N.C. Gen. Stat. §58-3-150(b) requires that the exclusion be approved before the group certificate regarding the insurance can be issued to the beneficiaries in North Carolina. The problem with Plaintiff's argument, however, is that by its terms subsection (b) applies only to "a trust or . . . association outside of this State." Eaton is neither. It is an Ohio corporation with its principal place of business in Ohio. [Doc. 20-3 at 3, Doc. 20-4 at 33]. The express terms of the statute simply do not apply. This is supported by the opinion of the Department of Insurance, provided during the pendency of this action and filed with this Court, that Eaton is "an Ohio domiciled single employer," [Doc. 25-2 at 3], and

> As such, certificates issued to NC residents, do not have to be approved here in NC.
>
> GS 58-3-150(b) does require that a policy issued to a trust or association outside of NC have the certificates issued to NC residents approved by NCDOI. That does not appear to be the case here.
> ...
> North Carolina residents insured under this employer's plan, would be covered under contracts that are outside NC Department of

---

[3] The SPD identifies Eaton as being domiciled in Ohio. [Doc. 20-3 at 3; Doc. 20-4 at 33].

9

Insurance regulatory authority.

[Id. at 2-3]. While this opinion from the NCDOI is not binding on this Court it is instructive. Cape Hatteras Elec. Membership Corp. v. Lay, __ N.C.App. __, 708 S.E.2d 399, 405-06 (2011) (ultimately it is the duty of the courts to construe administrative statutes although administrative interpretation to be considered); Petty v. Owen, 140 N.C.App. 494, 500-01, 537 S.E.2d 216, 220 (2000) (quoting Duggins v. Board of Examiners, 25 N.C.App. 131, 137, 212 S.E.2d 657, 662, affirmed 294 N.C. 120, 240 S.E.2d 406 (1978)) (an "administrative interpretation of a statute ... is properly considered in the construction of the statute by the court"). For these reasons it is clear that N.C. Gen. Stat. §58-3-150(b) does not require the prior approval of the exclusion, and thus Plaintiff's argument must fail.

Second, the Plaintiff claims that the language of §58-3-150(a) nonetheless requires NCDOI approval whenever any insurance certificate is issued to a North Carolina resident. ("It is unlawful for [MetLife] . . . to issue . . . [a] certificate [to Plaintiff] . . . until the forms [exclusion] have been . . . approved.") The problem with this argument is that MetLife issued its policy to Eaton in Ohio, not to Plaintiff in North Carolina. If the Court were to interpret §58-3-150(a) as Plaintiff suggests, then it would apply to all certificates issued to North Carolina residents for all group policies. As such, the requirement set

10

out in subsection (b) regarding approval of certificates would no longer be limited to trusts and associations, but would apply to any entity providing insurance for beneficiaries in North Carolina. Plaintiff's argument construes §58-3-150(a) so broadly as to completely swallow §58-3-150(b) and thus make subsection (b) a useless nullity. Moreover, if the General Assembly had intended that subsection (b) apply to corporations, in addition to trusts and associations, it would have included the word "corporations" in the language thereof. The North Carolina Supreme Court has "repeatedly stated that [s]tatutes dealing with the same subject matter must be construed *in pari materia* and harmonized, if possible, to give effect to each." Brisson v. Kathy A. Santoriell, M.D., P.A., 351 N.C. 589, 595, 528 S.E.2d 568, 571 (2000) (internal quotation and citation omitted; emphasis in original); Luna v. North Carolina Dept. of Environment and Natural Resources, 185 N.C.App. 291, 295, 648 S.E.2d 280, 282-83 (2007) (applying rule to interpretation of administrative regulation). Plaintiff's interpretation of §58-3-150 completely fails to adhere to this rule of construction. For these reasons, Plaintiff's interpretation of §58-3-150(a) is not a reasonable construction thereof, and Plaintiff's argument based thereon must fail.

Ultimately, however, even if approval had been required and not obtained, Plaintiff would still not be entitled to any relief. A violation of §58-3-

11

150(a) or (b) would not serve to render the exclusion void or unenforceable.

> Nowhere does G.S. 58-3-150 declare that all unapproved policy provisions are void and unenforceable. In fact, the General Assembly specifically provided for penalties for violations of Chapter 58 in G.S. 58-2-70 and G.S. 58-3-100. ... Voiding of the policy is not provided for by statute. ... [T]he statute does not purport to deal with the validity of the contract of insurance, but with the insurance company. ... [Moreover] the exclusion at issue is not contrary to the public policy of the State of North Carolina, as evidenced by its subsequent approval for use by the Department of Insurance.

Home Indemnity Co. v. Hoechst Celanese Corp., 128 N.C.App. 226, 234, 494 S.E.2d 768, 773, disc. rev. denied, 348 N.C. 72, 505 S.E.2d 869 (1998) (internal quotation and citation omitted). The Plaintiff has conceded that two months after her husband's death, the NCDOI approved the exclusion at issue.[4] [Doc. 23 at 5; Doc. 23-3 at 10 ("even though MetLife may have used a form ... before it received approval from our office, that would not void the policy"); Doc.23-3 at 12 (form approved 11-12-09)]. "Section 58-3-150(a) declares it 'unlawful' for insurance companies to do business in North Carolina without first submitting forms to the Commissioner of Insurance for approval." Cananwill, Inc. v. EMAR Group, Inc., 250 B.R. 533, 556 (M.D.N.C. 1999). The statute does not, however, indicate that unapproved policy forms "are either unlawful or unenforceable." Id. "Thus, it is apparent that the legislature did not

---

[4] Moreover, exactly the same form had previously been approved in 2002. [Doc. 23-3 at 12].

12

intend for the courts to render insurance contracts unenforceable when the insurance company issuing the policy has failed to comply with state approval provisions." Id. For these reasons, Plaintiff's argument that the exclusion is void and unenforceable is without merit. See, also, Richardson v. Bank of America, N.A., 182 N.C.App. 531, 554-55, 643 S.E.2d 410, 425 (2007), rev. allowed in part 361 N.C. 569, 650 S.E.2d 439 (2007), rev. improvidently allowed 362 N.C. 227, 657 S.E.2d 353 (2008) (citing Home Indemnity and distinguishing because no approval ever received).

Plaintiff's position in this case is based solely on her contention that the piloting exclusion is void and unenforceable. As she stated in her response,

> Plaintiff contends that MetLife's decision to deny benefits does not meet a standard of objective reasonableness because its decision was based upon an exclusion that was not properly a part of the policy at the time of Joe's death. Coverage for Joe's accidental death cannot be excluded by language that was not approved until two months after Joe's death. This exclusion could not have properly governed the Plan at the time of Joe's death.

[Doc. 23 at 5].

Plaintiff has not responded to Defendant's analysis of the factors under Booth, except to argue that the administrator's conclusion regarding the validity of the exclusion was wrong. The Court has reviewed the administrative record and the parties' submissions. The language of the Plan is clear and supports the Claims Administrator's decision. Champion, 550 F.3d at 359. The

13

enforcement of the piloting exclusion is consistent with the purposes and goals of the Plan. Id. MetLife fully complied with all procedural and substantive requirements of ERISA in reaching the decision to deny accidental death insurance and in notifying the Plaintiff of her right to appeal. Id. Moreover, the Plaintiff has not made any response in opposition to MetLife's assertion that it did so. Vaughan, 339 F. App'x at 327 (noting appellants failed to show they had been denied procedural requirements of ERISA); Brogan v.Holland, 105 F.3d 158, 165-66 (4th Cir. 1997) (claimant given full and fair review when notified of reasons for denial and relevant plan provision). Finally, to the extent that a conflict of interest existed, nothing has been presented or argued that such conflict had any effect on MetLife's determination. Glenn, 554 U.S. at 111. It paid the Plaintiff the death insurance benefit, and it denied the additional coverage based on the plain language of the policy.

Finally, the Defendants sought summary judgment on the ground that the Plaintiff had failed to exhaust her administrative remedies, a fact which she does not deny. Instead, she claims that MetLife never provided her with a copy of the Plan policy and thus, she could not decide whether to appeal the decision. Because the Court has determined that the decision of the Claim Administrator is supported by substantial evidence and is objectively reasonable, it is unnecessary to reach the issue of whether the claim raised in

this litigation is barred by a failure to exhaust administrative remedies. <u>Mullins v. AT&T Corp</u>., 424 F. App'x 217 (4th Cir. 2011) (finding decision denying benefits supported by substantial evidence despite failure to provide copy of policy).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 19] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice. Judgment is entered simultaneously herewith.

Signed: October 7, 2011

Martin Reidinger
United States District Judge